IN THE MATTER OF AN AGREEMENT DATED JULY 17, 1942, BETWEEN GEORGE LAUBENSTEIN AND OTHERS RELATING TO CERTAIN FORMULAE AND PROCESSES.

Superior Court of New Jersey
Chancery Division

Decided January 30, 1951.

*Messrs. Milton M. and Adrian M. Unger (Mr. Milton M. Unger appearing), attorneys for plaintiffs.*

*Messrs. Herrigel, Bolan & Vieser (Mr. Fred Herrigel, Jr., appearing), attorneys for defendants Katharine H. Doster, Ann H. Porter and Janet B. Herrigel.*

*Mr. Emanuel P. Scheck, attorney for defendant Lena Scheck and pro se.*

STEIN, J. S. C.   Plaintiffs Walter C. Garrigan and George Klink pray declaratory judgment respecting the rights and liabilities of the persons interested in an agreement dated July 17, 1942, between George Laubenstein and others relating to certain formulae and processes.

The parties to the agreement were formerly stockholders in the Finishing Service, Inc., a corporation now dissolved which was the owner of certain formulae and processes for the plating of metals. Upon dissolution of the corporation ownership of the formulae became vested in the parties thereto.

On July 17, 1942, George Laubenstein, George Klink and Allen B. Underhill individually and as agents for the remaining owners of the formulae entered into a written agreement with J. E. Mergott Co., in and by which the J. E. Mergott Co. was granted the right to use the formulae and processes in their business and in return agreed to pay for the use thereof a sum based on the quantities of materials used in the preparation and application of the formulae every month. The minimum payment was to be $1,200 per month. The money was to be deposited with the National State Bank of Newark, New

Jersey, and by it disbursed to the persons and in the proportions as set forth in the agreement.

The agreement further provided that the parties of the first part thereto (Laubenstein, *et al.*) were to purchase at Mergott Company's expense all material required for making the solutions in accordance with the formulae; that they were to make the solutions and service the same to fulfill the requirements of the business of the J. E. Mergott Co. and to comply fully with the terms of the agreement. Although the agreement is silent as to which of the parties were to perform the enumerated services, it appears that Laubenstein and Klink, the inventors of the formulae, performed these services during the existence of the agreement.

On June 15, 1944, by agreement of the parties, Walter C. Garrigan was substituted for Allen B. Underhill who had died.

In January, 1950, the J. E. Mergott Co. sold its frame business to the Fedders-Quigan Corporation. On January 4, 1950, Laubenstein, Klink and Garrigan in their own behalf and purportedly in behalf of the remaining owners, entered into an agreement with Fedders-Quigan Corporation granting to it the right to use the formulae and processes upon payment to them of the sum of $1,200 per month. The agreement also provided for instructing employees of Fedders-Quigan Corporation in the compounding of the formulae, the use thereof and the servicing of the same, which services were rendered by Laubenstein and Klink although the agreement was likewise silent as to which of the parties was to perform them. The moneys due and to become due under this agreement were to be paid to Laubenstein, Klink and Garrigan.

On May 25, 1950, Garrigan and Klink notified all of the owners of the formulae by letter of the sale by J. E. Mergott Co. to Fedders-Quigan Corporation of its handbag frame business and of the new agreement with Fedders-Quigan Corporation. The letter also stated that Laubenstein and Klink under the new agreement were required to supervise the purchase of materials, prepare the solution and supervise their

use; that Laubenstein and Klink requested payment of $600 per month for such services required to be rendered by them under the agreement; that only one-half of the amount received from Fedders-Quigan Corporation would therefore be distributed pending the approval of the remaining owners of the payment requested by them. All of the owners excepting the counterclaimants herein approved. The counterclaimants threaten suit.

In addition to a declaratory judgment, the plaintiffs seek instructions of the court as to the disposition of the claims of Laubenstein and Klink for their services and to fix the reasonable value thereof. Three of the co-owners have filed a counterclaim for an accounting.

The authorization to Laubenstein, Klink and Underhill to act as agents for the remaining owner in the execution of the agreement of July 17, 1942, provides as follows:

"Newark, New Jersey.
July 8th, 1942.

Messrs. George Laubenstein,
     George Klink
     Allen B. Underhill

Gentlemen:

This is to authorize you to act as our agents, and on our behalf, in executing and delivering the annexed agreement with The J. E. Mergott Co., and also in making the arrangement with the National State Bank which is contained in the letter attached hereto; or with any other bank of your selection.

Very truly yours,
(Signed)
Frieda Klink
Ann H. Underhill
Katherine Underhill
Janet B. Underhill
Virginia Laubenstein
Walter C. Garrigan
Emanuel Scheck
Helen T. Fisher
Lena R. Scheck"

The authorization is clear and unambiguous. It authorizes the three named to act as agents in the execution of the agreement of July 17, 1942, and to arrange for the distribution of

the moneys to be paid thereunder, and nothing more. The letter of July 20, 1942, to the National State Bank contained instruction as to the manner of the distribution of the fund, the persons to whom it was to be paid and the percentage each was to receive. There appears to be no dispute about the agreement of July 17, 1942, or the disposition of the moneys received by the National State Bank.

While the counterclaimants allege that they had no notice of the new agreement; that they did not consent to its execution and that Laubenstein, Klink and Garrigan had no authority to execute it in their behalf, yet they do not ask that it be voided. Their main contention is that Laubenstein and Klink are not entitled to compensation for their services and that all the moneys should be distributed in accordance with their interest in the ownership of the formulae.

The interest of the several parties in the ownership of the formulae is set forth in the 1942 agreement. No mention is made of such interests in the 1950 agreement. There is nothing before me to indicate any change therein so that such interests remain as stated in said 1942 agreement.

Neither of the agreements provide for compensation to Laubenstein and Klink for their services. It does not appear that the matter was ever discussed by the parties either at the time of the original agreement or at any time thereafter. Plaintiffs now ask the court to fix their compensation. They predicate their claim upon the theory that they are trustees for the owners of the formulae. They invoke the doctrine that trustees are entitled to compensation for their services although there is no provision for such compensation in the trust instrument. 2 *Scott on Trusts, p.* 1383, §242 (1931 *ed.*). But plaintiffs misconceive their relationship to their co-owners. They are not trustees for them. Neither of the agreements are trust instruments and they were not intended to be. They are simple contracts dealing with the sale of a commodity to a third party for a consideration. In both, plaintiffs and Laubenstein obligated themselves to the third party to perform the services for which they now seek compensation. Under the circumstances

this court is without authority to determine either that they are entitled to compensation or to fix compensation for them. These are strictly matters to be determined by the parties themselves. While it is true, as suggested, that they may refuse to perform the services with the result that they and their co-owners will receive nothing from the use of the formulae, yet if some of the parties desire to "cut their nose to spite their face," that is their concern and the court is powerless to prevent it.

By the terms of the agreement of January 4, 1950, the moneys due thereunder are to be paid to Laubenstein, Klink and Garrigan. Even though it be conceded that they had authority to enter into this agreement yet they exceeded their authority by receiving such moneys. The original authorization of July 8, 1942, directed them to make arrangement with the National State Bank or some other bank for the collection and distribution of the moneys for which the bank was to be paid the sum of $15 per month. They will be allowed this amount.

The counterclaim seeks an accounting of the moneys paid under the J. E. Mergott Co. contract and the Fedders-Quigan Corporation contract. It appears that the moneys due under J. E. Mergott Co. contract were paid to the National State Bank and disbursed by it. The National State Bank is not a party hereto, hence in these proceedings there can be no accounting of the moneys paid under the J. E. Mergott Co. contract. A different situation prevails as to the Fedders-Quigan Corporation contract. Under that contract the moneys were paid to Laubenstein, Klink and Garrigan for which they must account.